616 A.2d 628

**Reginald V. BLUE, Appellee,**

**v.**

**Ronald C. BLUE, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 25, 1991.

Decided Nov. 13, 1992.

ples of judicial economy require us to provide guidance on the second issue.

Frances G. Sonne, Allentown, for appellant.

Robert V. Ritter, Jr., Allentown, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

In this appeal, we are asked to determine to what extent a parent must pay for a child's college education and whether that child must contribute to his or her own college education

through the use of loans and grants. This scenario is but another fall-out from a failed marriage, and results in a son suing his father for assistance in paying for his college education.[1]

Reginald V. Blue's father and mother separated in October of 1987, with the mother leaving the marital residence. At the time of the support hearing in this matter in January of 1989, a divorce action was pending. Prior to separation, Reginald had attended three semesters of college at Pennsylvania State University. However, the emotional trauma of his parents' separation caused him to take a leave of absence during his second year at Penn State.

The father is an assistant professor at Lehigh County Community College with an annual salary of approximately $43,000.00. Reginald's mother is also employed by the college, as a secretary, with an annual gross income of approximately $12,000.00. Prior to separation, while Reginald was attending Penn State, all college expenses were paid for by Reginald's parents from their joint incomes. Reginald's parents did not require him to seek any financial assistance for his college education. Although in his brief Reginald disputes any plan to fund his college education, if necessary, through lifetime investments made by his parents, his father presented uncontradicted testimony that he and Reginald's mother had saved funds through stock purchases and individual retirement accounts to pay for Reginald's college education as well as any post graduate education.[2]

During the spring of 1988, with the encouragement of his father, Reginald attended Lehigh County Community College. Because Reginald's parents were employees of the college, no tuition had to be paid. It is also during this time that

1. We must note, that the son did not sue his mother under the same theory.

2. In his brief, Reginald argues that there is insufficient evidence to establish any agreement to fund his college education through the liquidation of stocks and individual retirement accounts. However, his father's testimony regarding this argument went unchallenged even though Reginald's mother was in the courtroom and available to testify regarding this alleged factual dispute.

Reginald resided with his father in the marital residence. The monthly mortgage on the marital residence was $280.00. In addition, it appears that the father alone paid for all of Reginald's needs including $40.00 a week spending money, a car payment and automobile insurance.

During the summer and fall of 1988, Reginald worked as a ride operator at Dorney Park and as a temporary for Kelly Services. Through both jobs, Reginald earned approximately $6,265.44. During the hearing, it was disputed as to how much remained of Reginald's earnings. His father seemed to argue that Reginald would have realized approximately $4,000.00 if he had not spent much of his money on his girlfriend, while Reginald testified that he only saved $2,200.00 after paying his car payment, automobile insurance and food expenses incurred while working 12-hour shifts at Dorney Park.

In August of 1988, Reginald's father decided that he needed to "get on with his life" and purchased a $114,000.00 five-bedroom home without any down payment being required. The monthly mortgage payment for this new home was $1,187.00 a month or a monthly mortgage payment increase of $900.00. The father then left his son and the marital residence and moved into his new home with his girlfriend and her two minor children where the father pays all the monthly living expenses except for the girlfriend's car payment and her medical expenses. Approximately 30 days after father left the marital residence, mother, her boyfriend and his emancipated son moved into the marital residence.[3] During his semester breaks, Reginald now lives with his mother who provides free room and board.

Sometime during the summer of 1988, Reginald reapplied and was accepted to resume his college studies at Penn State commencing with the fall term of 1988. Because he did not have the funds to pay the required college expenses, Reginald postponed returning to Penn State until January 1989. At that time, the cost of tuition, room and board was approxi-

3. There is no evidence as to whether mother's boyfriend or his son contributed to any of the monthly household expenses.

mately $6,440.00 with an additional $400.00 needed for books and other expenses.

As of the January 1989 hearing, $2,000.00 had been paid towards Reginald's bill, $1,000.00 from his earnings/savings and $1,000.00 from a loan from his mother. Reginald did testify that he did apply for grants beginning with the January 1989 term. He had not applied sooner because he believed his application would be rejected because he lived with his father during 1988 and his father's income was too high.

After taking testimony and giving both parties the opportunity to offer legal authority in support of his position, the trial court entered an order requiring the father to pay $4,600.00 a year towards Reginald's college education. In addition, the trial court required Reginald to apply for and accept any educational loans or grants he received. The father would then be entitled to a reduction in support to the extent of any grants and/or loans received.

On appeal, the Superior Court affirmed the assessment of support in the amount of $4,600.00 a year, but reversed the trial court with regard to the requirement that Reginald seek financial assistance and that the father's support obligation be reduced by the amount of any assistance received. 400 Pa.Super. 613, 576 A.2d 1129 (1990). In its memorandum opinion Superior Court reasoned that since parents bear the financial responsibility for college expenses, a child should not have to obtain loans and/or grants but should that child choose to do so, a parent's obligation to provide support should not be reduced.

We granted the father's Petition for Allowance of Appeal to address the issue of parental responsibility to provide college educational support and reverse the Superior Court's determination.

The scope of review in a typical support matter is whether the trial court has abused its discretion. *Costello v. LeNoir*, 462 Pa. 36, 337 A.2d 866 (1975). Even though this appeal does not present a typical support matter, we see no reason for adopting a different scope of review. In essence,

we are reviewing an order requiring a parent to provide support, albeit not monthly support but rather educational support. Therefore, an abuse of discretion is the appropriate standard of review. See *Emrick v. Emrick,* 445 Pa. 428, 284 A.2d 682 (1971); *Leonard v. Leonard,* 353 Pa.Super. 604, 510 A.2d 827 (1986); *Miller v. Miller,* 353 Pa.Super. 194, 509 A.2d 402 (1986). This Court has defined an abuse of discretion as follows:

> Not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record, discretion is abused.

*Kelly v. County of Allegheny,* 519 Pa. 213, 217, 546 A.2d 608, 610 (1988) citing *In re: Women's Homeopathic Hospital of Philadelphia,* 393 Pa. 313, 316, 142 A.2d 292, 294 (1958).

The trial court and the Superior Court differed as to a parent's responsibility for college expenses. Relying upon *Leonard,* the Superior Court held that parents bear the primary financial responsibility for their child's reasonable college expenses. Opinion p. 630. The Superior Court then determined that the trial court misapplied *Leonard* and shifted the primary obligation for college expenses to Reginald.

The trial court determined that the father caused his own undue hardship as the result of his real estate purchase. Therefore, the trial court determined that the father had a duty to provide financial assistance to Reginald. However, the trial court also concluded that the father did not have limitless financial resources and therefore Reginald had the primary obligation for his own college education. This added requirement to the holdings of *Miller* and *Leonard* is what caused Superior Court to reverse the trial court.

Upon closer scrutiny, what has been accepted as fact is actually fiction. Neither statute nor specific case law had enunciated the legal axiom relied upon by the lower courts. To the contrary, all that had been articulated was that set forth in *Emrick v. Emrick,* supra.

In *Emrick v. Emrick,* supra, the mother and father had entered into an agreement subsequently incorporated into the divorce decree which required the father to provide a four-year college education for each of his children commensurate with his financial ability. When the father refused to pay the educational expenses of two college age children, the mother sought enforcement of the agreement and decree. In reversing both the Superior Court and the trial court, which had dismissed the mother's claim for educational expenses, we were persuaded by the fact that the father had entered into an agreement to pay educational expenses. We did not unequivocally adopt a legal principle that a parent has a legal obligation to provide college expenses but rather permitted recovery of college expenses if a parent had the financial ability to do so, because the parties' agreement had required that result. Therefore, our research having found no legal authority to require a parent to provide for college educational support, we must reverse the Superior Court and decline to adopt the reasoning of either lower courts.

Since *Emrick,* this Court has not reviewed this particular issue although the Superior Court has been faced with this issue in varying forms. See *Leonard v. Leonard,* 353 Pa.Super. 604, 510 A.2d 827 (1986) (the proper determination in evaluating the parents' ability to pay college expenses is the parents' earning capacity rather than his actual income); *Miller v. Miller,* 353 Pa.Super. 194, 509 A.2d 402 (1986) (the independent resources of a college age child may be considered in determining the child's need for support); *Brake v. Brake,* 271 Pa.Super. 314, 413 A.2d 422 (1979) (a support order may be entered against a parent for a child's college education, even in the absence of an agreement to support the child past the age of 18, as long as this obligation would not result in undue hardship to the parent); *Lederer v. Lederer,* 291 Pa.Super. 22, 435 A.2d 199 (1981) (factors to be considered in awarding college education support is whether the child is able and willing to successfully pursue his course of studies, the adequacy of the income of the child, and whether the parent has sufficient estate, earning capacity or income to

provide for the education without undue hardship); and *Ulmer v. Sommerville,* 200 Pa.Super. 640, 190 A.2d 182 (1963). In each instance, the Superior Court assumed that a legal obligation existed and molded a remedy in response to that obligation.

The Superior Court's reasoning seems to have evolved from its opinion in *Commonwealth v. Gilmore,* 97 Pa.Super. 303 (1929). In *Gilmore,* a father obligated to pay support for his minor son, attempted to terminate support upon his son reaching the age of 16. The father argued that state law only mandated attendance at school until age 16 and that sufficient employment opportunities existed within the community for his son to obtain a job to support himself. Therefore, since attendance at school was no longer required, the need to provide support for his minor son ceased. In response, the father's minor son testified as to his progress in school and his desire to continue with his education and complete high school.

In refusing to grant the father's petition to terminate support, the trial court (whose opinion was adopted by the Superior Court) noted that case law tended to include some education within the purview of a parent's obligation to provide support and maintenance.

> "The law, apart from statute has come to recognize that parental duty involves, in addition to provision for mere physical needs, such instruction and education as may be necessary to fit the child reasonably to support itself and to be an element of strength rather than one of weakness in the social fabric of the state."

97 Pa.Super. at 308.

At that time, an education was deemed to be a necessity in the preparation of a child for the rigors of life and to assist that child in becoming useful in society. However, the term "education" in this context did not contemplate collegiate or professional education but rather was confined to elementary and vocational education. The reason for this distinction was that elementary education was considered a necessary element of support much like food, clothing and housing. The duty to provide educational support beyond the minimum state-re-

quired attendance, however, was tempered by the parent's ability to pay and the child's commitment to completing his high school studies.

In recent history, the Superior Court has adopted and applied the *Gilmore* analysis to college educational support of a child. In essence, the Superior Court has transferred this "principle of necessity" of a basic fundamental education to a requirement that each child be entitled to an "enhanced" education. We do not agree with this transformation.

Under the common law, a parent had a duty to support a minor child. In its wisdom, our General Assembly has bestowed adulthood on minor children at age 18. Consequently, the common law duty to support a minor child must by necessity cease at age 18. Although several states have imposed a statutory duty upon a parent to provide college educational support for a child no longer considered a minor, (see i.e. Ind.Code Ann. 31–1–11.5–12 and 40 Ill.Rev.Stat. Section 513) our General Assembly has not. Accordingly, since no legal duty has been imposed by our legislature, nor have we developed such a duty by our case law, we decline to do so. Since our legislature has taken an active role in domestic matters through amendments and reenactment of the Divorce Code and the Domestic Relations Act, we feel the more prudent course is to await guidance from that body rather than creating duties and obligations by judicial pronouncement.

A basic education as guaranteed by our Commonwealth constitution must be available to all Commonwealth citizens. In many instances, high school students reach their 18th birthday prior to graduation from high school. It would make no sense to terminate a support order while a child is attending high school. The rigors of high school are difficult enough without worrying about how a child is going to support himself for the remaining days of his high school education. Therefore, notwithstanding a child reaching majority at age 18, a parental duty of support is owed until a child reaches 18 or graduates from high school, whichever event occurs later.

This will ensure that children have a minimum education in order to prepare them for the challenges of life.

The judgment of the Superior Court is reversed and the complaint for support for aid to higher education is dismissed.

CAPPY, J., concurs in the result.

LARSEN, J., files a dissenting opinion.

McDERMOTT, J., did not participate in the decision of this case.

LARSEN, Justice, dissenting.

I dissent. I do not see this case as involving an abuse of discretion.

I would affirm the Superior Court's order as to the holding that parents have an obligation to provide college support for their children. I would reverse the Superior Court's order as to the parents not getting a reduction or credit toward this obligation from the children's grants, scholarships, loans, financial worth, etc. No windfalls should occur here.