**Krieg v. Megargel**

Both parties pro se.

TURGEON, *J.,* December 29, 1992—The obligor in this case, Terry E. Megargel, has been paying child support for the parties' two children, Greg and Brett, pursuant to various court orders commencing in March of 1987.

Since July 12, 1991, pursuant to an agreed modification support order, he has been paying child support only for Greg.[1] Brett graduated from Dartmouth College on June 9, 1991, and was, therefore, deleted from the order. Greg is enrolled in his senior year (1992-93) at Shippensburg University. The obligor has made his support payments faithfully.

On November 20, 1992, the obligor filed a petition to terminate the support order for Greg relying on the recent Pennsylvania Supreme Court ruling in *Blue v. Blue,* 532 Pa. 521, 616 A.2d 628 (1992), no. 203 E.D. Appeal Dkt. 1990 (1992), which held, inter alia, that parents are not liable for the educational support of their children who are over 18 years of age. He requested that the support order be terminated immediately and further requested restitution in the amount of $19,600 for college costs that he had been "forced to pay" during the prior years. Notice of the petition to terminate was immediately mailed to the obligee by the Domestic Relations Office. Hearings on this case and others[2] involving *Blue* issues were held before this court on December 18, 1992.

For decades Pennsylvania appellate and lower courts have imposed, under certain conditions, a duty of child support for post-secondary educational and living ex-

---

1. The order provided for payments in the amount of $64 per week which was a modification of the prior order entered on December 5, 1989, in the amount of $80 per week for two children. It also provided for the obligor to continue medical coverage on the child.

2. The other cases argued raised similar issues to this case and have been disposed of primarily based upon this opinion.

penses. *Blue* at 527, 616 A.2d at 631 (cases cited therein). The Supreme Court, in the minds of many, affirmed this duty on numerous occasions including in *Emrick v. Emrick,* 445 Pa. 428, 284 A.2d 682 (1971).[3] The court in *Blue,* however, held the duty to provide support for education ends at high school graduation or age 18, whichever occurs last, and distinguished *Emrick* as follows:

"[In *Emrick*] [w]e did not unequivocally adopt a legal principle that a parent has a legal obligation to provide college expenses but rather permitted recovery of college expenses if a parent has the financial ability to do so, because the parties' agreement had required that result." *Blue* at 527, 616 A.2d at 631. Yet, this court notes that the clear language of the Supreme Court in its *Emrick* opinion suggests otherwise:

"With varying results due to the different circumstances of each case, the Superior Court has consistently enunciated the principle, *which we approve, that a father has no duty* to aid in providing a college education for his child, no matter how deserving, willing or able a child may be, *unless the father has sufficient estate, earning capacity or income to enable him to do so*

---

3. In fact, the Pennsylvania Supreme Court declined prior appeals on this very issue, leaving the legal world to believe it was the law. See e.g., *Mauer v. Mauer,* 382 Pa. Super. 468, 555 A.2d 1294 (1989), *appeal denied* 522 Pa. 596, 562 A.2d 320 (1989). Furthermore, Pennsylvania's child support statute clearly provides that parents may be liable for the support of their children who are 18 years of age or older. 23 Pa.C.S. §4321(3).

without undue hardship to himself." *Emrick v. Emrick* at 430-31, 284 A.2d at 683 (emphasis added).

That the Superior Court, lower courts, and most lawyers, relied on *Emrick* as articulating confirmation of the duty of educational support as the law in Pennsylvania has not been unreasonable.

This court, along with all other courts, must now apply and interpret the ramifications of the *Blue* decision. As expected, there has been a spate of petitions, including this case, to redetermine court orders relating to support for college-age children.

We are presented with two issues: the first, how *Blue* applies to agreed orders; and the second, whether *Blue* should be applied (a) retrospectively to the date the child attained the age of 18 or graduated from high school (whichever was later), (b) retrospectively to the date of the filing of the petition to terminate or modify, if filed prior to the entry of the *Blue* decision, (c) retrospectively to the date the *Blue* decision was issued or the date the petition to terminate was filed (whichever was later), or (d) prospectively to the date marking the end of the current 1992-93 school year.

## Applicability of Blue to Agreed Orders

The first issue is how *Blue* applies to this case in which there was entered an "agreed" educational support order following a Domestic Relations Office conference. The obligee likens the agreed order to the agreement in *Emrick* in which the Supreme Court upheld the imposition of

college support. In this case, there is also a marital settlement agreement which specifically provides that the father (obligor) will continue to provide medical insurance for the children until their completion of college.

*Blue* does not affect court orders which are issued pursuant to written marital settlement agreements. In *Emrick,* the parents had entered into an agreement (subsequently incorporated in a divorce decree) which required the father to provide a four-year college education for each of his children commensurate with his financial ability. When the father refused to pay, the mother sought enforcement of the agreement and decree. The Supreme Court upheld the agreement. In *Blue,* the court distinguished that case from *Emrick* because of the absence of such an agreement. Therefore, even under *Blue,* the obligor in this case clearly continues to have a contractual duty to provide medical insurance for Greg.[4]

The parties' marital settlement agreement is silent, however, on the parties' obligation for payment of their children's college expenses. The issue thus becomes whether the "agreement" reached by the parties at the Domestic Relations Office conference, which resulted in an "agreed order," is the legal equivalent of a written marital settlement agreement, such as in *Emrick.* The obligor argues he had little or no choice but to enter into an agreed

---

4. We note that the Superior Court recently held that estrangement of the child from his or her parent does not eliminate a contractual support duty, even after *Blue, Trunkwalter v. Trunkwalter,* 421 Pa. Super. 308, 617 A.2d 1308 (1992), no. 00812 Phila. 1992, slip op. at 12-3 (Pa. Super. Dec. 17, 1992).

order because the Domestic Relations Office was going to enter an order against him with or without his approval, based upon the belief that the law imposed that obligation on him. In fact, he noted that he had previously petitioned to have the order terminated after the child's high school graduation because he did not approve of the particular college chosen nor had his input been sought on the choice. Nevertheless, he was not obligated to agree and could have appealed the order, as did the father in *Blue*.

Agreements entered into in settlement of litigation are as enforceable as any other agreements and end the matter as if it had been fully litigated. *Barson's and Overbrook v. Arce Sales,* 227 Pa. Super. 309, 312, 324 A.2d 467, 468 (1974). The fact that the obligor may have entered into the agreed order and even his marital settlement agreement, based upon the parties' mutual mistake of law would not necessarily invalidate the agreement. See, 17 C.J.S. *Contracts* §145 (1963). See also, 17 Am.Jur.2d *Contracts* §259 (1991). We believe the agreed order,[5] therefore, was enforceable. However, we do not believe for these purposes an agreed support order at the Domestic Relations Office is the legal equivalent of an unconditional agreement to provide educational support in a marital settlement agreement in which various and mutual claims and obligations are negotiated based upon numerous considerations.

---

5. Also, agreed orders are specifically encouraged under support procedures. See, Pa.R.C.P. 1910.11 (explanatory comment—1981).

All support orders entered which are *not* based on a marital settlement agreement (or based on a written marital settlement agreement which allows for modification) are subject to modification based upon "a material and substantial change in circumstances." Pa.R.C.P. 1910.19 (explanatory comment—1981). We hold *Blue* has created such a circumstance in this case.

## Retroactivity

Our state's support statute addresses the issue of retroactive modification of support obligations as follows:

"If a petition for modification was filed, *modification may be applied to the period* beginning on the date that *notice of such petition was given,* either directly or through the appropriate agent, to the obligee or, where the obligee was the petitioner, to the obligor. However, *modification may be applied to an earlier period if* the petitioner was precluded from filing a petition for modification by reason of a significant physical or mental disability, misrepresentation of another party *or other compelling reason* and if the petitioner, when no longer precluded, promptly filed a petition. *In the case of an emancipated child, arrears shall not accrue from and after the date of the emancipation of the child for whose support the payment is made. 21 Pa.C.S. §4352(e) (emphasis added)*

The portion of this statute which states that "in the case of an emancipated child, arrears shall not accrue from and after the date of the emancipation of the child

for whose support the payment is made," might support the argument for retroactive application of *Blue,* to the child's 18th birthday or high school graduation, absent consideration of other more compelling factors against retroactivity.

Whether a court accords retroactivity to a judicial decision may depend upon whether the court thinks it merely discovers or actually creates the law. Under Blackstonian theory, it was argued that all judicial decisions should be applied completely retroactively on the basis that courts "discover" the law. See, *Ruggero J. Aldisert, The Judicial Process,* at p. 877 (1976). "When overruling decisions have been denied retroactive effect, it has almost always been for either or both of the following reasons: (1) to protect persons who have ordered their affairs in reliance upon what they contemporaneously perceived to be the law; (2) to protect stability in an area where society has recognized stability to be of particular importance," *Id.* at 888. See also, *Chevron Oil Co. v. Hudson,* 404 U.S. 97 (1971). Furthermore, the Pennsylvania Supreme Court has adopted the standard used by the U.S. Supreme Court in deciding on the question of retroactivity or non-retroactivity of a new decision: (1) the purpose to be served by the new rule; (2) the extent of the reliance on the old rule; and (3) the effect on the administration of justice by the retroactive application of the new rule. *Blackwell v. Commonwealth State Ethics Commission,* 527 Pa. 172, 183, 589 A. 2d 1094, 1099 (1991) (citing *Desist v. United States,* 394 U.S. 244 (1969)).

Justice Cardozo, a Blackstonian critic and a proponent of prospective overruling, has stated that in determining retroactivity, the court should consider if retrospective overruling would work unfairly on persons who have justifiably relied upon judicial decisions thereby "frustrat[ing] the reasonable expectations of well-intentioned men." Note, *Prospective Overruling and Retroactive Application in the Federal Courts,* 71 Yale L.J. 907, 910 (1962), (quoting Cardozo, *Address Before N.Y. State Bar Association,* 55 Rep. N.Y. State Bar Assn. 263, 294 (Jan. 22, 1932)). A court should also consider "the element of surprise" and the effect retroactivity would have upon the administration of the court. See *Id.* at 945-51. Many judicial decisions have not been applied retroactively based upon this "reliance" theory.[6]

There is little doubt that most involved in domestic relations matters have certainly believed the law was contrary to what was announced by the court in *Blue.* Albert Momjian Esq., a well known Pennsylvania family-law practitioner, has recently observed as follows:

"Prior to *Blue,* any divorce lawyer who would have said that Pennsylvania law does not require parents to contribute to the support of their college-bound children

---

6. For example, the Supreme Court of Illinois refused to apply the court's ruling abolishing the doctrine of the sovereign immunity retroactively because, in reliance on the immunity doctrine, school districts had failed to adequately insure themselves against liability. *Molitor v. Kaneland Community Unit District,* 163 N.E.2d 89, 97-98 (Ill. 1959). The court therefore held that their decision would be applied prospectively only.

would have been laughed out of court." Momjian, Striking a *Blue* Note, 15 Pennsylvania Law Journal no. 45 p. 5 (December 7, 1992).

Accordingly, thousands of young adults have enrolled in one to four year colleges or technical school programs, relying on the financial contribution of their parents. "Crying will be thousands of college students whose educational careers may be torpedoed by their warring parents." *Id.* "To suggest that this decision will have a dramatic effect on the citizens of Pennsylvania, (and, in particular the children of divorced parents) is an understatement." Gold-Bikin, Cutting the Cord, 15 Pennsylvania Law Journal no. 45 p. 2 (December 7, 1992). The extent of reliance on the old rule thus is fairly clear.

Next, as suggested by Cardozo, we must consider if retroactive application would "work unfairly" on those well-intentioned." There is no statutory provision for "refunds" in this case nor did *Blue* suggest one.

If we were to retrospectively apply *Blue* to the child's 18th birthday or their date of graduation from high school, but not provide for repayment of support monies paid, it would result in tremendously inequitable results. For instance, those parents who have been dutifully paying their weekly child support payments, such as obligor in this case, would in effect be "punished" by having made those payments, and those parents who had not made the payments and built up arrearages, would be entitled to have that arrearage vacated. It should also be noted that numerous support orders were entered in this case

since 1987 and none were appealed. We believe obligor therefore is estopped from asserting a claim for a refund. *Clark v. Troutman,* 509 Pa. 336, 502 A.2d 137 (1985).

In conclusion, on the retroactivity issue, to be intellectually honest, we believe the Supreme Court in *Blue* actually enunciated *new* law, despite its statements to the contrary. We conclude, therefore, that retroactive application of the *Blue* decision to support orders entered prior to the issuance of *Blue* on November 13, 1992, would be improper, unwarranted and unjust. Further, we will not apply *Blue* retroactively to any date prior to the date notice of the obligor's petition for termination, the date statutorily set forth for applicability of modification orders. 23 Pa.C.S. §4352(e).

## *Prospectivity*

The remaining issue is whether the new *Blue* rule should be applied only prospectively. In this case, as in thousands of others across the state, there is an existing order and the child is in the middle of his senior college year. The child has already enrolled and contractually obligated for tuition, room and board for the completion of both the fall and spring semesters. We recognize that if we terminate the order now, the child may have no choice but to leave during the middle of his final college year, potentially wreaking havoc on that child's life. We also recognize the unfortunate economic effect this issue will have on many of our educational facilities because of these unexpected forced "drop outs." In some counties,

a policy has developed whereby the courts have indicated they will not interfere with the education of the child in the middle of the college year. Momjian, Striking a *Blue* Note at 18.

We recognize that in some circumstances a court may make a decision purely prospectively to provide a *delayed* effective date, based upon the reliance of not only the parties but others on what they reasonably believed to be the law and the concern over destruction of "vested rights." See, 17 C.J.S. *Courts* §148 (1963). While we agree that such a prospective policy may be socially and politically "correct" in this matter, we question whether it would be appropriate. Considering legislative versus judicial functions we also doubt whether it could withstand appellate scrutiny. The Pennsylvania Legislature must act to answer this child's and others' pleas for such future educational support.

In conclusion, in the absence of any appellate case law to the contrary, we will apply *Blue* to terminate post high-school educational support orders as of the date of *Blue* or the date notice is given of a petition to terminate, whichever occurs last.

### Suspension Versus Termination of Order

Finally, we are asked to merely suspend the order rather than terminate it based upon the expectation that the Pennsylvania Legislature will promptly act to change the law regarding educational support in the near future.[7] A court

---

7. The Supreme Court in *Blue* stated that it is up to the legislature to determine whether parents should provide support for post-high

which makes a support order retains jurisdiction at all times for the purpose of modifying that order, *Mosier v. McCaughtry*, 387 Pa. Super. 405, 564 A.2d 241 (1989); 23 Pa.C.S §4352(a). This court, therefore, will retain jurisdiction of this case, to reimpose the support order, automatically, without the petition of either party, should the legislature adopt legislation reimposing post-high school educational support obligations.[8] Therefore, with this caveat, the support order will be modified to terminate child support payments.

Accordingly, we enter the following

ORDER

And now, December 29, 1992, the portion of the support order entered in this case on July 12, 1991, for weekly payments of $64 per week is terminated effective the week of November 20, 1992. The obligor's duty to provide medical insurance remains in effect.

The obligor's request for restitution of monies previously paid is denied.

school education under certain circumstances. "Since our legislature has taken an active role in domestic matters through amendments and reenactment of the Divorce Code and the Domestic Relations Act, we feel the more prudent course is to await guidance from that body rather than creating duties and obligations by judicial pronouncement." *Blue* at 529, 612 A.2d at 632.

8. Just prior to recess of its 1992 session, legislation which would have statutorily enacted pre-*Blue* law, did pass in the House of Representative but died in the Senate.