## Hulton v. Hulton

*Angela Martinez,* for Office of Support Enforcement.
*Richard S. Clarkson,* for defendant.

JENKINS, *J.* August 17, 1994—The parties to this action are the parents of 21 year old Christopher Hulton, who, at present, is a full-time student at Boston University. The parties have been separated since 1984, at which time the defendant agreed to a support order

of $250 per week for plaintiff and two children, apportioned $100 per child and $50 spousal support. This support obligation remained in effect until March 29, 1993, when Judge Fitzpatrick of this court reduced the order to $50 per week, for wife only, because both children had reached majority and completed high school.[1] *Blue v. Blue,* 532 Pa. 521, 616 A.2d 628 (1992).

On March 30, 1993, the plaintiff, Sharon Hulton, filed a petition to increase. Her petition was granted on June 10, 1993, when the master increased the amount of her spousal support from $50 to $130 per week effective retroactive to the date of her petition. Immediately after the legislature enacted 23 Pa.C.S. §4327, Sharon Hulton filed a second petition seeking an increase or modification of the support order entered by the master, which petition sought support for Christopher Hulton and was based solely upon the change in the law incorporated in Act 62 of 1993, obligating divorced or separated parents to contribute to their children's secondary educational expenses under certain circumstances.

The defendant challenges the proposed modification of the support order on two separate bases. First, he maintains that Act 62 is unconstitutional because it deprives him of his constitutional rights to equal protection and due process under the law.[2] Second, he argues that, even assuming the constitutionality of the statute, the

---

1. The second child, Timothy, is presently 25 years of age and is not the subject of this proceeding.

2. The Attorney General of Pennsylvania was provided notice of defendant's challenge to the constitutionality of 23 Pa.C.S. §4327 on May 17, 1994. The attorney general has taken no action in response to said notice.

relative financial positions of the parties do not warrant the requested relief.

Under the statutory scheme of Act 62, the court may order either or both parents who are separated to contribute to the post secondary educational costs of their child after the child has reached 18 years of age. 23 Pa.C.S. §4327(a), *supra.* The award of a contribution to educational costs may be entered only if the child has made reasonable efforts to apply for scholarships, grants and work study assistance. The statute then mandates a calculation of total educational costs, followed by a reduction of these costs by the amount of grants and scholarships awarded to the student.[3] 23 Pa.C.S. §4327(c), (d). In considering the equitable apportionment of the remaining educational costs, the court is required to consider the financial resources of the parents and the student, the availability of other financial assistance, the degree of success enjoyed by the student, possible estrangement of the child and parent and the ability of the child to contribute through employment. 23 Pa.C.S. §4327(e). Finally, the legislature has forbidden the award of educational costs where undue hardship to either parent would result. 23 Pa.C.S. §4327(f).

---

3. "Educational costs" is defined at 23 Pa.C.S. §4327(j) to include tuition, fees, books, room, board and other educational materials. Because it was the intention of the General Assembly in enacting the foregoing statute to codify the decision of the Superior Court in *Com. ex rel. Ulmer v. Sommerville,* 200 Pa. Super. 640, 190 A.2d 182 (1963) and a subsequent line of cases prior to *Blue v. Blue, supra,* this definition must be construed to include those items only to the extent that they are reasonable while considering the student's station in life and the financial resources of his parents. *Com. ex rel. Stump v. Church,* 333 Pa. Super. 166, 481 A.2d 1358 (1984).

In relation to the factors set forth in the statutory scheme, the following facts can be discerned from the record. The per semester expense of attending Boston University during the most recent term was $11,924 for tuition, room and board. (N.T. May 24, 1994 at 28.) Christopher Hulton is currently receiving financial assistance in the amount of $6,975 per semester. (*Id.* at 29.) Additionally, assorted expenses relating to books and fees amount to approximately $1,000 annually. (*Id.* at 30.) The parties' son did not consider state or state assisted universities because such an education would not enable him to get a good job. (*Id.* at 54-44.) The defendant's income is approximately 75 percent of the aggregate income earned by the parties. (*Id.* at 77-78.) The parties are each in poor health. (*Id.* at 42, 68-69.) Mother graduated from West Chester State College and earns approximately $11,000 net annually, including spousal support. (*Id.* at 48.) Father is a high school graduate with 10 college credits. (*Id.* at 65.) Mother works one day per week for the Marple Newtown School District, but devotes 30 to 35 hours weekly to these duties. (*Id.* at 48.) She is unemployed in the summer. (*Id.* at 49.) Father is paid on an hourly basis and earns approximately $32,000 net annually. (*Id.* at 76.) Christopher Hulton at present is 21 years old and in good health but contributes nothing to his educational costs by summer employment. (*Id.* at 53-54.) Christopher and the defendant are estranged since prior to the time the son reached his majority, but the reasons for the estrangement are unclear. (*Id.* at 70.)

In addressing the argument that defendant is denied his right to equal protection under Section 1 of the Fourteenth Amendment to the United States Constitution and the Constitution of the Commonwealth of Pennsylvania, Pa.C.S. Const. Art.1, §1, this court is not writ-

ing upon a pristine slate. This same issue has already inspired opinions generated by six other courts of common pleas of this Commonwealth with divergent results. *Byrnes v. Caldwell,* no. D-1116-84, February 15, 1994 (Montgomery County, Nicholas, P.J.) (no violation of equal protection or ex post facto clauses); *Curtis v. Kline,* no. 1012N 1984, January 11, 1994 (Chester County, MacElree, J. (Act 62 is unconstitutional, violative of equal protection clause); *Hasson v. Hasson,* no. 686, 1993, April 12, 1994 (Lawrence County, Ciazza, J. ) (not violative of equal protection); *Fazzolari v. Fazzolari,* 114 Dauphin Co. Rep. 59 (1994) (Turgeon, J.) (not unconstitutional as violative of equal protection or due process). *Munford v. Munford,* no. 94-0762, June 3, 1994 (Lebanon County, Tylwalk, J.) (unconstitutional, not rationally related to a legitimate state interest and violative of equal protection clause); *Fender v. Fender,* no. FD 93-06331, May 27, 1994 (Allegheny County, Kaplan, J.) (not violative of equal protection).

In this case, the parties agree that in the evaluation of the equal protection argument, the question is whether there is a "rational basis" for this legislation. No plausible argument can be made that a "suspect class" has been identified or a "fundamental right" has been infringed. *James v. SEPTA,* 505 Pa. 137, 477 A.2d 1302 (1984). In the application of the rational basis standard, the court must determine whether there is a legitimate legislative interest in requiring parental assistance for the higher education of children of separated or divorced parents. In this context, the issue is not whether the defendant here is treated differently from the father of children of cohabiting parents, but rather whether the General Assembly maintains a rational and legitimate interest in providing for the welfare of children

of separated and divorced spouses, and whether the means chosen to effect the legislative purpose is reasonable. *Byrnes v. Caldwell, supra* at 5.

As a beginning proposition the court agrees with those jurisdictions which have determined that "college education for capable students" is a worthy social objective. *Id.* at 4. Furthermore, it is reasonable to conclude that children of divorced, separated or unmarried parents are generally in greater need of protection in the pursuit of college education than are children of intact marriages. The children of separated parents are frequently victimized by the bitterness engendered by the disintegration of the marital home. Accordingly, it is reasonable that Act 62 would protect such children without interfering with the economic decisions of intact families.

Relative to the manner in which this legislation attempts to address its salutary purpose, it seems reasonable that the legislative scheme should dictate that the court, in the exercise of its equity powers, must give due consideration to the financial resources of the parents and the child, the ability to draw upon other financial sources, the talent and success of the child, the ability of the child to contribute by his own gainful employment, the extent to which financial hardship would result, and the willful estrangement between the parent and child caused by the child after attaining majority. Such a statutory scheme appears to the court to give due consideration to all of the relevant financial and familial factors which need be considered.

Under all of these circumstances, we find that there is clearly a rational basis for this legislation and we reject the equal protection challenge of the defendant here.

Defendant also argues that he is denied his right to liberty and property in violation of the due process

clauses of the United States and Pennsylvania Constitutions.[4] According to this argument, Act 62 has arbitrarily "precluded [defendant] from deciding that his child should pay his own college expenses."

The court disagrees. Act 62 requires that the court apportion the expense of undergraduate education among the parents and the child after due consideration to all relative factors which would be employed by the intact family. In this context, the substantive due process rights of the defendant are protected because the court is required to consider all relevant factors, including financial hardship, the ability to contribute, the success of the child and the availability of other resources.

If the defendant's argument is construed as challenging procedural due process, his argument is even less compelling. The statutory scheme requires notice and an opportunity to be heard at an appropriate hearing. *Fazzolari v. Fazzolari, supra* at 62. In this case, a hearing was held, the parties were provided the opportunity to present evidence, and to confront, by cross-examination, the testimony of the witnesses presented in opposition to their positions. In short, it is difficult to discern how substantive or procedural due process was denied the defendant in this context.

Defendant next maintains that, assuming arguendo the constitutionality of the statute, the facts adduced here have warranted no order of support. The child's failure to consider any educational options except private institutions located a considerable distance from his home has resulted in an annual educational expense

---

4. Amendments 5 and 14 of the Constitution of the United States; the Constitution of the Commonwealth of Pennsylvania, Pa.C.S. Const. Art. I, Section 9.

after grants and scholarships in the amount of $11,000. He has chosen not to obtain summer employment, although he is required by the university to work during the year to earn money for personal expenses. His mother maintains that she is disabled, but refuses to apply for disability. His father is an hourly wage earner working full-time following open heart surgery and a diagnosis of cancer. Neither parent's financial situation is particularly comfortable, and neither received a college education at a private school.

Under these circumstances, it is unreasonable to expect Christopher Hulton's parents to pay the $11,000 annual shortfall in educational costs. It is however not unreasonable to expect them to contribute to a course of education consistent with their station and resources. An average state university in the Commonwealth of Pennsylvania costs approximately $11,000 annually including tuition, room, board, books and fees. It is reasonable to expect that Christopher could receive financial assistance to the extent of 50 percent of these costs (he now receives 56 percent), or in the alternative secure gainful employment to the same extent. If he continues at Boston University, it remains reasonable to expect that he contribute to his own education through employment to the extent of 50 percent of the net costs each year following deduction of grants and scholarships. His parents can reasonably be expected to contribute the remaining 50 percent in proportion to their earnings. The defendant earned 75 percent of the parties' aggregate income, and he should therefore be obligated to contribute $4,125 annually, or $80 weekly. Additionally, the financial responsibility for medical insurance and unpaid health care should be similarly divided. An order for support consistent with the foregoing findings shall be filed simultaneously with this opinion.