Prediger v. Alderfer

*Douglas I. Zeiders,* for plaintiff.
*Joseph M. Lamonaca,* for defendant.

NICHOLAS, *P.J.,* October 14, 1994—Defendant, Todd Alderfer, has appealed to the Superior Court of Pennsylvania from our order dated July 21, 1994, which directed defendant to pay 80 percent of the college educational costs for his son, Matthew Alderfer (d.o.b. March 10, 1974), pursuant to Act 62, 23 Pa.C.S. §4327, following a hearing held before the undersigned on July 11, 1994.

Defendant filed his notice of appeal to the Superior Court on August 5, 1994. By order dated August 8, 1994, defendant was directed to file with this court a concise statement of the matters complained of on appeal, pursuant to Pa.R.A.P. 1925(b). A copy of defendant's concise statement was received by the undersigned on August 18, 1994.

In paragraph one of his concise statement, defendant contends that this court "erred in concluding that Act 62 is constitutional, and not in violation of the Equal Protection Provisions of the United States and Pennsylvania Constitution."

Act 62, 23 Pa.C.S. §4327, approved July 2, 1993, provides, in pertinent part, that: "a court may order either or both parents who are separated, divorced, unmarried, or otherwise subject to an existing support obligation to provide equitably for educational costs of their child whether an application for this support is made before or after the child has reached 18 years of age. The responsibility to provide for post-secondary educational expenses is a shared responsibility between both parents."

Act 62 was enacted by the legislature in order to address its finding that a legitimate governmental interest exists in "requiring some parental financial assistance for a higher education for children of parents who are separated, divorced, unmarried or otherwise subject to an existing support obligation." 23 Pa.C.S. §4327, Historical and Statutory Notes. Defendant contends that Act 62 violates the Equal Protection Clause of both the United States Constitution and the Pennsylvania Constitution in that the courts are not given comparable powers to compel parents in *intact* families to contribute to the postsecondary educational expenses of their children. We disagree.

Although the appellate courts of this Commonwealth have yet to rule upon the constitutionality of Act 62, the undersigned previously has concluded, after careful review of appellate decisions from other jurisdictions interpreting statutes similar to Act 62, that the Act passes constitutional muster. See our decisions in *Byrnes v. Caldwell,* C.P. Montgomery County, no. 92-20581, D-

1116-84, case no. 30543, February 15, 1994 (Appeal to Superior Court docketed at 978PHL94) and *Saltford v. Read,* C.P. Montgomery County, no. 93-24333, D-1506-83, case no. 27499, June 13, 1994 (Appeal to Superior Court docketed at 1333PHL94). We note that other courts of common pleas in this Commonwealth also have upheld the constitutionality of Act 62. See *e.g.,* the excellent opinion of the Honorable Lawrence W. Kaplan in *Fender v. Fender,* C.P. Allegheny County, FD93-06331, May 27, 1994 (Appeal to Superior Court docketed at 445PGH94).

Act 62 clearly does not implicate any of the suspect classifications requiring application of the "strict scrutiny" standard of constitutional analysis (*i.e.,* race or religion). The statute also does not affect rights traditionally deemed important enough to trigger the intermediate level of analysis appropriate, for example, where legislation impacts upon access to the courts or creates gender-based classifications. The interests at issue here are exclusively economic, therefore, the court need only determine that a rational basis exists for the legislation. See *e.g., Lewis v. School District of Philadelphia,* 517 Pa. 461, 538 A.2d 862 (1988); *James v. SEPTA,* 505 Pa. 137, 477 A.2d 1302 (1984); *Martin v. Unemployment Compensation Board of Review,* 502 Pa. 282, 466 A.2d 107 (1983); *Mowery v. Prudential Property & Casualty Insurance Co.,* 369 Pa. Super. 494, 535 A.2d 658 (1988), *alloc. denied,* 518 Pa. 641, 542 A.2d 1370 (1988).

In this regard, the undersigned finds particularly persuasive the reasoning of the Supreme Court of New Hampshire in *LeClair v. LeClair,* 137 N.H. 213, 624 A.2d 1350 (1993). We note that, under the rational basis test, a strong presumption exists that legislation is valid. To be upheld, classifications need only have

a rational basis relating to a legitimate state purpose under any reasonably conceivable set of facts. See *FCC v. Beach Communications Inc.,* 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). We agree with the *LeClair* court that college education for capable students is a worthy social goal, and we conclude that Act 62 reflects an appropriate legislative response to the problems faced by children of divorced, separated, and unmarried parents in financing their college education. We see nothing irrational in a legislative conclusion that such children are generally, but not inevitably, in greater need of protection than are children of intact marriages.

It is an unfortunate reality that economic retaliation, bitterness, and even hatred, are frequently at work in situations where marriages have been dissolved or are in the process of dissolution, with the interests of the children taking a back seat to the dispute between the parents, too often to such an extent that the interests of the children become mere bargaining chips in the conflict. Intact families, on the other hand, more often, although not inevitably, will struggle and sacrifice in order to provide their children with higher education in order to enrich their lives and better enable them to succeed in an increasingly competitive world. Parental love, sense of obligation, and pride in their child's accomplishments usually result in provision for the college education of children of intact marriages, even at a sacrifice. While there are, doubtless, parents of intact families who will refuse their children the resources for post-secondary education, we see nothing irrational in a legislative determination that the risk of such refusal is greater where the marital bonds of the parents have been torn asunder and the parents are faced with the prospect of laying individual claim to the resources of their failed union, or where no intact family ever existed.

We note further that Act 62 reflects the historic tradition in our law that courts normally will not interfere with the economic decisions of intact families. See *e.g.,* *Commonwealth v. George,* 358 Pa. 118, 56 A.2d 228 (1948); *Shilling v. Shilling,* 394 Pa. Super. 154, 575 A.2d 145 (1990). Divorce, separation, and the birth of children outside of wedlock, however, frequently result in the intervention of the courts with regard to economic issues, *i.e.,* child and spousal support, equitable distribution of marital assets, et cetera, for the purposes of mitigating harm to the parties and advancing the best interests and welfare of the children threatened thereby.

Given these realities and this long-standing tradition of our law, it cannot be said that there is no rational basis for the legislature's determination in Act 62 to regard children of divorced, separated, or unmarried parents as worthy of special protection. The Equal Protection clauses of the United States Constitution and the Pennsylvania Constitution simply do not require the legislature to protect *all* children *precisely* equally. See *e.g., Kujawinski v. Kujawinski,* 71 Ill.2d 563, 376 N.E.2d 1382 (1978); *Neudecker v. Neudecker,* 566 N.E.2d 557 (Ind. Ct. App. 1991), *aff'd,* 577 N.E.2d 960 (Ind. 1992). As the court opined in *Childers v. Childers,* 89 Wash.2d 592, 575 P.2d 201, 207 (1978), "The child of divorced parents should be in no worse position than a child from an unbroken home whose parents could be expected to supply college education."

In paragraph two of his concise statement, defendant contends that this court "erred in its application of Act 62, and the provisions therein, to the facts of this matter, in determining that defendant owes any obligation for college tuition payments." It is virtually impossible for the undersigned, from this general state-

ment, to identify what specific "errors" defendant complains of here. In any event, we see no error in our application of Act 62 to the facts of this case, and we believe our order dated July 21, 1993 fully reflects our careful consideration of the statute in calculating Matthew's educational costs and in allocating the burden of these costs between the parties.

In paragraph three of his concise statement, defendant contends that the court "erred in not considering what actions this family would have taken regarding college tuition and placement, had the family remained intact." We disagree. Neither language nor the logic of Act 62 impose any such obligation upon the court.

23 Pa.C.S. §4327(c) directs the court to calculate the child's educational costs as defined by section 4327(j), to wit, "Tuition, fees, books, room, board and other educational materials." Nowhere in section 4327(c) is the court directed to consider, in calculating the child's costs, what actions the family might have taken had the family remained intact.

23 Pa.C.S. §4327(e) provides that, after deducting from the child's educational costs any grants and scholarships awarded to the child, "the court may order either parent or both parents to pay all or part of the remaining educational costs of their child." In determining the amount and allocation of any award, section 4327(e) directs the court to consider:

"(1) The financial resources of both parents;

"(2) The financial resources of the student;

"(3) The receipt of educational loans and other financial assistance by the student;

"(4) The ability, willingness and desire of the student to pursue and complete the course of study;

"(5) Any willful estrangement between parent and student caused by the student after attaining majority;

"(6) The ability of the student to contribute to the student's expenses through gainful employment. The student's history of employment is material under this paragraph;

"(7) Any other relevant factors."

Nowhere in section 4327(e) is the court called upon to speculate as to what actions the family might have taken had it remained intact.

23 Pa.C.S. §4327(f) provides that an order for support for educational costs may *not* be entered where:

"(1) Undue financial hardship would result to the parent;

"(2) The educational costs would be a contribution for postcollege graduate educational costs;

"(3) The order would extend support for the student beyond the student's 23rd birthday. If exceptional circumstances exist, the court may order educational support for the student beyond the student's 23rd birthday.

Nowhere does section 4327(f) provide that any actions which might hypothetically have been taken by an intact family in any way bar the court from entering a support order.

We note, in any event, that this court certainly heard no testimony concerning any actions this family might have taken had it remained intact which would lead us to alter, in any way, our order of July 21, 1994. Defendant himself acknowledged that Matthew is a good student and should have a college education. (N.T., July 11, 1994, p. 79.) Defendant testified that he has no objection to Matthew's decision to attend Kutztown University for the remainder of his college career. (*Id.*, p. 86.) Defendant's only objection appears to be Matthew's earlier decision to attend American University for his freshman year, an objection which appears to

be exclusively economic. (*Id.,* pp. 85-86.) This court, however, heard no compelling evidence indicating that our award works any undue economic hardship upon defendant.

The court determined that plaintiff's monthly net income is $915, while defendant's monthly net income is $5,068. Defendant raises no challenge to the factual determinations made by the court in this regard. Defendant similarly makes no challenge to the figure calculated by the court as Matthew's educational costs. The court directed that defendant be responsible for 80 percent of said costs. This translates into responsibility to pay $3,260 of Matthew's expenses to attend Kutztown University, where he is enrolling as a second semester sophomore in fall 1994. Defendant is also responsible for arrearages in the amount of $6,465, representing 80 percent of Matthew's educational costs for his previous attendance at American University and Montgomery County Community College, with said arrearages payable by defendant in weekly installments of $60. We simply do not believe that this award works any undue hardship upon defendant where defendant has a monthly net income of $5,068, and where defendant produced no compelling evidence that he had other extraordinary expenses such as would make it exceedingly difficult for him to meet his obligations in this regard.

In paragraph four of his concise statement, defendant contends that the court "erred in placing the burden on the parents to provide for a college education, and then the student." In paragraph five, defendant contends that the court "erred in determining that the student did not have the means and resources available to him to provide for his own education." Defendant apparently construes Act 62 as placing the primary burden of fi-

nancing a college education upon the child, with the court to look to the parents for assistance only where the child has insufficient resources of his own. We disagree, both as to defendant's interpretation of the statute and as to defendant's contention that Matthew has sufficient funds of his own to finance his college education.

The intent of 23 Pa.C.S. §4327 clearly is to establish that a child's parents have the *responsibility,* where they are financially able, to contribute to that child's postsecondary educational expenses. Section 4327(e) does provide that, among the factors for the court to consider in fashioning an award, are the financial resources of the child and the child's ability to contribute to his expenses through employment. There is no indication whatever, however, that the court is required to look first to the resources of the child and only to the parent's resources if the child's resources are insufficient. The statute, instead, calls upon the court to consider the *entire* situation and to equitably fashion an award that is as fair as possible to both parents and to the child, as we believe we have done in the instant case.

As we noted in our order of July 21, 1994, we believe we are authorized by section 4327(e)(3) to treat Matthew's $2,625 Stafford Loan as a contribution by him to his own education in attending Kutztown University. It is Matthew, after all, who will ultimately bear the responsibility of repaying this loan. We credit the testimony of Matthew and plaintiff that Matthew's previous employment earnings were necessarily devoted to transportation and tuition costs while Matthew attended Montgomery County Community College. We are further convinced that any future employment earnings by Matthew will be required by him to cover his own personal expenses while attending Kutztown University. In contending that Matthew has sufficient resources

of his own to pay for his college education, we believe, from the evidence placed before us, that defendant cannot be envisioning Matthew attending, full-time, a four-year university. While it theoretically may be possible for Matthew himself to finance part-time attendance at a community college while contemporaneously engaging in full-time employment, we are convinced that Act 62 in no way mandates such a result. We believe that a student is entitled under Act 62 to the best education for which he is academically capable and which he and his parents can reasonably afford, without *undue* hardship to any party. We are completely satisfied that Matthew is an able, interested student and, again, we fail to see how our order is in any way inequitable to defendant.

In paragraph six of his concise statement, defendant contends that the court "erred in not considering the child's voluntary estrangement from his father." We disagree.

Section 4327(e)(5) requires the court to consider, in fashioning its award, "Any willful estrangement between parent and student caused by the student after attaining majority." Defendant in the instant case, however, presented us with no evidence of such willful estrangement and, indeed, made no argument before this court that any such estrangement existed. For the record, we note that our review of the notes of testimony indicates that any "estrangement" that existed was actually precipitated by *defendant.* In testimony we credit, Matthew explained that, on Christmas day 1993, he visited defendant at defendant's home and was informed by defendant that if he (Matthew) did not drop the instant action for educational support, defendant would leave him out of his will and his relationship with defendant's children by defendant's second wife "would change." Matthew testified that it "sounded as though

I would no longer be able to see them." (N.T., July 11, 1994, pp. 56-57.) This evidence scarcely demonstrates any willful estrangement instigated by Matthew. See *e.g., McGettigan v. McGettigan,* 433 Pa. Super. 102, 639 A.2d 1231 (1994); *Reif v. Reif,* 426 Pa. Super. 14, 626 A.2d 169 (1993).

Finally, in paragraph seven of his concise statement, defendant contends that the court "erred in concluding that Act 62 could be applied retroactively to reinstate a previous college obligation that was terminated by this court as a result of the student's lack of pursuit of his education, the student's voluntary termination of said educational pursuit, and the *Blue* decision, with said decision never being appealed."

Defendant here is contending that he should not be required to pay any portion of the educational costs Matthew incurred while enrolled as a freshman at American University. Defendant relies upon an order of the Honorable Lawrence A. Brown, dated March 3, 1993, which dismissed an order of support previously entered in this case. Defendant contends that Matthew's eligibility for support can be effective only as of September 8, 1993, when mother filed her petition to reinstate, after the passage of Act 62. We disagree. We note initially that we see no factual support in the record for defendant's contention that Matthew "voluntarily terminated" his educational pursuit. We credit the testimony of plaintiff and Matthew that Matthew was compelled by illness to withdraw from American University prior to the conclusion of his freshman year. We hardly see this as a voluntary termination. Matthew subsequently enrolled at Montgomery County Community College while living at home with plaintiff and working to help pay his expenses.

Judge Brown's order of March 3, 1993 was entered in reliance upon *Blue v. Blue,* 532 Pa. 521, 616 A.2d

628 (1992). Act 62 was enacted by the legislature in response to *Blue,* with the intention of codifying previous case law following *Ulmer v. Sommerville,* 200 Pa. Super. 640, 190 A.2d 182 (1963). See 23 Pa.C.S. §4327, Historical and Statutory Notes. See also, *McGettigan, supra,* and *Soll v. Soll,* 429 Pa. Super. 312, 632 A.2d 581 (1993). In *Hecker v. O'Connell,* 427 Pa. Super. 608, 629 A.2d 1036 (1993), the trial court relied upon *Blue, supra,* in terminating an order for college support. The Superior Court "reversed and remanded to the trial court for reconsideration in light of Act 62." The *Hecker* court noted, "... it is clear that the legislature intended the statute to take effect retroactively to prevent the invalidation of college support orders entered prior to the decision in *Blue." Hecker, supra* at 611, 629 A.2d 1036, 1037.

In the instant case, plaintiff's petition for post-secondary educational costs was filed on April 24, 1992. As in *Hecker, supra,* Judge Brown's order of March 3, 1993 was premised upon *Blue, supra.* Act 62 was enacted by the legislature on July 2, 1993. We see no merit to defendant's contention that plaintiff's "failure" to appeal from Judge Brown's order bars Matthew from benefiting from Act 62 prior to the filing of the petition to reinstate. Prior to the legislature's adoption of Act 62 on July 2, 1993, effectively reversing *Blue,* plaintiff would have had no legitimate grounds for taking such an appeal. Plaintiff can hardly be punished for a decision not to pursue what would have been, at that time, a frivolous appeal.

For all of the foregoing reasons, our order dated July 21, 1994 should be affirmed.