657 A.2d 1270

**Mary BOLTON, Appellee,**

v.

**William C. BOLTON, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 20, 1994.

Filed April 25, 1995.

Richard J. Orloski, Allentown, for appellant.

Jean Engler, Asst. Dist. Atty., Jim Thorpe, for Com.

Before CIRILLO, OLSZEWSKI and HESTER, JJ.

OLSZEWSKI, Judge:

William Bolton appeals the order of the Court of Common Pleas of Carbon County dismissing his exceptions and adopting the findings of fact and temporary support order recommended by the hearing officer. We vacate and remand.

The parties, appellant William C. Bolton (Father), and appellee Mary C. Bolton (Mother), are the divorced parents of William Bolton, Jr., a recent graduate of Wilkes University. In August 1990, Father was ordered to pay $109 per month to help his adult son through college. The payments stopped in December 1992, when our high court handed down its decision in *Blue v. Blue*, 532 Pa. 521, 616 A.2d 628 (1992). In 1993, the Legislature effectively reversed *Blue* with Act 62, creating a statutory duty for divorced parents to help pay for their adult children's college educations. *See* 23 Pa.C.S.A. § 4327. On July 22, 1993, Mother petitioned the lower court to reinstate the support payments. By this time William Jr. was 21 years old and about to begin his senior year at Wilkes University.

The Master found Father owed a duty of support in the amount of $127 per month, retroactive to the date of the suspension of the prior order. The Master first determined that William Jr. was a diligent and above-average student,[1] had applied for and received all the financial aid reasonably available, and was working over the summers and during the school year to help finance his education. R.R. at 9a. William Jr. thus qualified under Act 62 for a court-ordered educational subsidy from his divorced parents. *See* 23 Pa.C.S.A. § 4327(a) and (e).

The Master then determined William Jr.'s annual educational expenses, grants, scholarships, and income. The Master could have simply taken William Jr.'s educational expenses, subtracted the financial aid and income, and then split all or part of the difference equitably between the parents. *Id.* at (e). But he decided to inquire into William Jr.'s personal expenses.

The Master found that William Jr. spent more than $450 per month on his medical insurance and allergy treatment, transportation, "normal living expenses, entertainment and car repairs." R.R. at 9a. The Master provided no greater detail

1. William Jr. testified that he was "carrying about a 2.8 average." R.R. 69a. The record does not contain a copy of his grade transcripts, and the master made no other findings regarding William Jr.'s academic abilities and performance.

for this finding. He did accept into evidence a handwritten schedule of William Jr.'s annual expenses which included payments/insurance/repairs for his car ($2800), food/toiletries/haircut ($800),[2] life insurance ($96), clothing ($900), telephone ($225), entertainment ($750), and cable TV ($127). R.R. at 118a.

The Master thus found that William Jr.'s "expenses for education and personal expenses, exceed his income and financial aid by at least $840.00 per month." R.R. at 9a. Again, no details were provided—only the final figure. The Master then put this figure aside, determined the comparative incomes of the parents, and went to the child support guidelines. The guideline figure for Father's income, relative to his ex-wife's, called for a child support payment of $127 per month, which is what the Master ordered. R.R. at 11a.

Father took exception to the Master's use of the child support guidelines in this case, but the trial court considered the error harmless, writing:

> This Court concurs with the Hearing Officer's finding that the child's expenses for education and personal expenses exceed his income and financial aid by at least $840.00 per month. (Finding of Fact # 8). Although the Master erred in using the "support guidelines" to determine the amount of support, this Court finds the error to be harmless, as the "guideline" amount is less than the amount Defendant would have to pay based on his proportion of the uncovered expenses. Based on the record, the Hearing Officer found, and this Court agrees, that the Defendant pay approximately ½ of the child's monthly needs.

Trial court opinion, 4/14/94 at 4. Thus, even though the amount of the award derived solely from the support guidelines, the trial court affirmed it because it did not exceed Father's equitable share of William Jr.'s combined educational and personal expenses.

2. William Jr.'s schedule of educational expenses included his room and board, so these food expenditures would be in addition to his regular visits to the dining hall.

■ Because of its recent passage, we have had little opportunity to interpret Act 62. One aspect of this law should be obvious from its face, though: it only covers educational costs. 23 Pa.C.S.A. § 4327(a) and (b). Educational costs are tuition, fees, books, room, board and other education materials. *Id.* at (j). Father has no obligation under any statute or at common law to pay for such sundries as his 21–year–old son's car insurance or cable television.

■ Father properly excepted to the inclusion of personal expenses in the support award, but the trial court never addressed the issue. R.R. at 12a, 169a; appellant's brief at 1. The court clearly erred in allowing the award to be based on William Jr.'s personal expenses, and its order must therefore be vacated and remanded for recalculation. *See McGettigan v. McGettigan*, 433 Pa.Super. 102, 639 A.2d 1231 (1994) (trial court improperly included personal living expenses in Act 62 support order).

The record reveals that the Master approached this action as though it were a regular child support case. He relied largely on the parties' testimony to determine William Jr.'s expenses, and then arrived at an award amount by simply plugging his parents' monthly incomes into the support guidelines. The trial court acknowledged that the guidelines should not have been used, but affirmed the award as a reasonably equitable division of William Jr.'s educational and personal expenses. Yet the record only shows a single semester's tuition bill, and no receipts for other defined educational expenses. Also, by the time the monthly support order was approved by the trial court, William Jr. was well into his senior year. Thus, it would appear that the order was questionable in three respects: it provided scant factual basis for the payment amount, it improperly included William Jr.'s personal expenses, and it required continuing court supervision to enforce and eventually terminate. We therefore offer the following observations to guide the lower court on remand.

Support actions under Act 62 are profoundly different from ordinary child support actions. When determining monthly

support payments to minor children, we do not even try to calculate the children's living expenses. We rely instead on the guideline amounts, which have been formulated to reflect what parents of a particular income level would reasonably be expected to spend in support of their minor children. *See Ball v. Minnick*, 538 Pa. 441, 648 A.2d 1192 (1994).

■ Act 62, on the other hand, authorizes courts to order parents to contribute to their adult children's undergraduate educations. Hence, we are not dealing with the broad and hard-to-quantify category of general living expenses, but rather with a narrow and specific set of costs which can be precisely and easily documented. We are also not dealing with children, but with adults. There is no reason why adults who seek parental contributions to their college expenses should not be expected to back up their requests with proper documentation. Father's statutory duty to contribute to defined educational costs ought not to be extrapolated from a single semester's tuition bill and vague estimate of book store purchases. If William Jr. and his mother have not bothered to keep careful track of their expenditures, perhaps Wilkes University can help them reconstruct an accurate record of the actual tuition, fees, room and board that they have paid.

■ Along the same line, we see no reason why the lower court would fashion any future award as a monthly support payment. William Jr. should have graduated by now, and his undergraduate educational costs should be liquidated. Since Mother is no longer spending money on William Jr.'s college education, the trial court should treat this as an action to recover educational costs already expended. 23 Pa.C.S.A. § 4327(b). The final order in this case should therefore be a judgment for a sum certain, which could be collected by ordinary legal means.[3]

3. In general, we note that actions under Act 62 are expressly removed from the context of ordinary support actions. *See* Pa.R.C.P. § 1910.16–5(k), 42 Pa.C.S.A. While trial courts might still choose to structure Act 62 support awards as monthly payments, there is no requirement that they do so. Also, the extraordinary equity powers which a court

Thus, we vacate the order and remand this case for calculation of the costs which may be properly charged to Father under Act 62, noting that: 1) Act 62 support awards must be limited to defined educational costs; 2) these costs should be carefully documented, from the big tuition bills down to the last itemized receipt from the campus book store; and 3) since these costs have now been liquidated, the action is addressed to the court's law side and may result in a money judgment, but not a support order.

Vacated and remanded with instructions. Jurisdiction relinquished.

Dissenting statement by CIRILLO, J.

CIRILLO, Judge, dissenting:

I respectfully note my dissent. Although Father does not expressly raise a constitutional equal protection challenge to Act 62, in my opinion this court denies ultimate justice by ignoring the blatant issue before it, that Act 62 invidiously discriminates against divorced parents.[1]

In 1992, our Supreme Court determined that the duty of support extended to a "basic education," defined as a high school education, or until a minor reaches the age of eighteen, whichever occurs later. *Blue v. Blue*, 532 Pa. 521, 616 A.2d 628 (1992). The Court stated:

In recent history, the Superior Court has adopted and applied the [*Commonwealth v.*] *Gilmore*[, 97 Pa.Super. 303 (1929)] analysis to college educational support of a child. In essence, the Superior Court has transferred this "principle of necessity" of a basic fundamental education to a require-

exercises in child support proceedings, such as the power to jail a non-paying party for contempt, would not necessarily apply here.

1. The term "divorced parents" refers to all parents to which Act 62 is applicable, including unmarried parents or separated parents subject to a support agreement, support order, property settlement agreement, equitable distribution agreement, custody agreement and/or court orders and agreed to or stipulated court orders. *See* 23 Pa.C.S. § 4327(i)(1).

ment that each child be entitled to an "enhanced" education. We do not agree with this transformation.

*Id.* 532 Pa. at 529, 616 A.2d at 632.

Act 62, applicable only to divorced parents, imposes upon that class of parents an obligation to provide financially for an adult child's college or postsecondary education. Nondivorced parents have no coextensive legal obligation to provide support for their child's postsecondary education. Just as parents in an intact family enjoy the freedom of making the personal decision of whether and to what extent to provide postsecondary educational support for their child, free from interference or mandates by the courts or laws of the Commonwealth, so too should divorced parents be free to manage this matter on their own.

In my opinion, Act 62 differentiates between parents similarly situated and that this classification bears no reasonable relationship to a legitimate legislative purpose. *See McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1104–05, 6 L.Ed.2d 393 (1961). Act 62, which codifies this court's pronouncements beginning with *Ulmer v. Sommerville,* 200 Pa.Super. 640, 190 A.2d 182 (1963), frustrates the legislative purpose to assure children of divorced parents a postsecondary education. I discern no rational basis for compelling divorced parents to pay for their adult child's post-secondary education where no similar obligation lies with non-divorced parents.

It is with this in mind that I would find that Act 62, which imposes a duty of postsecondary educational support upon divorced parents where no similar obligation exists for married parents, is unconstitutional on equal protection grounds. *Application of Christy,* 362 Pa. 347, 67 A.2d 85, *cert. denied, Christy v. Conver,* 338 U.S. 869, 70 S.Ct. 145, 94 L.Ed. 533 (1949); 16A Am.Jur.2d, Constitutional Law, §§ 735–738 (1979); 7A P.L.E. Constitutional Law, § 241 (1980). *See* Moore, *Parents' Support Obligations to Their Adult Children,* 19 Akron L.Rev. 183, 192 (1985) (presenting the argument that

compelling divorced parents but not married parents to pay post-minority support is a violation of equal protection).