622 A.2d 347

**Lorrie GOSS, Appellant,**

v.

**Randall L. TIMBLIN.**

Superior Court of Pennsylvania.

Submitted Nov. 16, 1992.

Filed March 12, 1993.

218

Mary Jo Dillon, Butler, for appellant.

Marilyn J. Horan, Butler, for appellee.

Before CIRILLO, TAMILIA and HESTER, JJ.

HESTER, Judge.

Lorrie Goss appeals from the April 21, 1992 order entered by the Court of Common Pleas of Butler County in this support action. She formerly was married to Randall Timblin, appellee, and has remarried since the divorce. Appellant sought an increase in support to pay for the post-secondary educational expenses of Jeison, the parties' youngest child, who lives with appellant. The parties executed a separation agreement on November 7, 1984, in which they agreed, "Both parties shall assist the children to obtain a college education to the best of their then financial ability." The trial court ordered appellee to pay $175.00 per month for Jeison's tuition and expenses. Appellant argues that the trial court erred in calculating Jeison's educational expenses by not specifically

considering her contribution to Jeison's room and board and by reducing Jeison's anticipated educational costs by deducting an amount equal to a loan that she obtained to pay for Jeison's tuition. We agree and reverse and remand.

The record reveals the following. The parties were married on June 1, 1970, in Butler, Pennsylvania. They separated in February, 1982, and divorced on November 4, 1984. Two children were born of the marriage, Randall Jr., born October 10, 1970, and Jeison, born December 17, 1972. Both parties since have remarried, and appellee has a six-year-old daughter by his current wife. Both Randall Jr. and Jeison have attained their majority and reside with appellant. However, since Randall Jr. has not pursued higher education, we are concerned only with support for Jeison.

Jeison, who is over eighteen, chose to attend the Art Institute of Pittsburgh for training in the graphic arts. He anticipates earning an associate degree in visual communications in two years instead of three. In the parties' separation agreement, appellee agreed to assist the children to obtain a college education to the best of his financial ability "at that time." Appellant filed a petition for increased support to pay for Jeison's college expenses in June, 1991. The trial court adopted the master's findings with respect to the income and expenses of the parties but reduced appellee's obligation from $350 to $175 per month. Appellant filed this appeal contending that this amount is inadequate and that the court erred in its calculations.

Appellee is employed at Measuray Corporation as an operations manager and nets approximately $3,350 per month. His claimed expenses include $1,929 for mortgage and property taxes, $240 for utilities, $130 for insurance, $220 for automobile expenses, $600 for food, $112 for medical expenses, and $320 for child care. This totals $3,551 per month. Thus, his expenses currently exceed his income.

Appellant is a claim analyst at Nationwide Insurance Company and nets approximately $1,327 per month. Appellant's monthly expenses include $395 for mortgage, $260 for utilities, $300 for food, and $94 for health insurance. Her monthly

expenses total $1,049, which leaves approximately $278 per month of income unallocated. Jeison works part-time at Friedman's Supermarket earning at $4.25 per hour or approximately $85 per week. His earnings since have risen slightly due to a pay raise.

Jeison's academic program lasts eight quarters, and he will earn an associate's degree. The program normally is completed in three years, with the summers free. Jeison, however, wants to complete the program in two years by continuing school during the summer. He hopes this faster pace will permit him to continue his education by obtaining a bachelors degree. He lives with appellant at home and commutes to school in a Volkswagen, which he owns and maintains. Jeison to date has done very well in this program.

The trial court calculated that the amount of tuition not covered by loans equalled $1,530 the first year, $1,200 the second, and none for the third year, or a total of $2,730. The court then added $3,510 for additional mandated costs for art supplies. It added these two figures together to calculate a total of $6,250 not met by the previously-approved loans. The court then divided this sum by thirty-six months and set appellee's support obligation at $175 per month. It also found that Jeison was earning enough to pay for his own transportation, food, and lodging. It finally concluded that $175 per month would not burden appellee unduly.

We initially note that appellee specifically agreed to contribute to the costs of Jeison's education. In *Blue v. Blue,* 532 Pa. 521, 616 A.2d 628 (1992), our Supreme Court overruled prior case law propounded by this court and determined that there is no obligation by parents to contribute to the post-secondary educational expenses of a child in Pennsylvania, absent enactment of such a duty by our legislature. Since appellant specifically agreed in the separation agreement to contribute to college education to the best of his financial ability, however, the resolution of this case becomes a matter of interpretation of language set forth in the separation agreement in accordance with principals of contract law. *See Trunkwalter v. Truckwalter,* 421 Pa.Super. 308, 309–311, 617

A.2d 1308, 1309 (1992) (provision to pay for higher education in a settlement agreement is enforceable on its own terms even absent a legal duty to do so).

It is well-established that a settlement agreement between a husband and wife in Pennsylvania is governed by the law of contracts unless the agreement states otherwise. *Brower v. Brower*, 413 Pa.Super. 48, 56, 604 A.2d 726, 730 (1992). *See also De Witt v. Kaiser*, 335 Pa.Super. 258, 262, 484 A.2d 121, 123 (1984) (interpretation of contract terms are determined pursuant to the rules for contracts generally).

Our standard of review for contracts is clear. In *PBS Coals, Inc. v. Burnham Coal Co.*, 384 Pa.Super. 323, 328, 558 A.2d 562, 564 (1989), we stated:

> The paramount goal of contractual interpretation is to ascertain and give effect to the intent of the parties. *Greene v. Oliver Reality, Inc.*, 363 Pa.Super. 534, 526 A.2d 1192 (1987). In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language of the contract was chosen carelessly. *Daniels v. Bethlehem Mines Corp.*, 391 Pa. 195, 137 A.2d 304 (1958).

Instantly, the sole issue before the trial court was the determination of the ability of both parties to contribute to Jeison's educational needs. "In the absence of fraud, mistake, overreaching or the like, it is not the function of the court to redraft a contract to be more favorable to a given party than the agreement which that party chose to enter." *Id.* In interpreting the separation agreement, the court is not to insert language not placed there by the parties. *Daniels v. Bethlehem Mines, supra.* Consequently, the court's role was to establish what amount represented the most the parties reasonably agreed they could contribute in relation to their financial ability.[1]

1. We note with interest the fact that appellee has incurred significant financial obligations since he agreed contractually to provide college support for his child. While the trial court looked at appellee's reasonable expenses in terms of present obligations, we believe that care must be taken that litigants do not effectively void their contractual obli-

■ Appellant first argues that the trial court erred in its calculation of Jeison's educational costs in that it incorrectly determined the amount of Jeison's expenses for education. She contends that the costs should include expenses for room, board, necessary transportation, and medical insurance, which are all necessary adjunct expenses of his education. Specifically, appellant asserts that Jeison will incur transportation costs over the next two years in lieu of boarding at school. During the same period, appellant asserts she will incur costs of $7,640 to provide room and board for Jeison to live at home in lieu of the expense of his boarding at school. She obtained this figure by dividing her expenses per year by three people (herself and her two children). In addition, appellant contends that while the yearly cost of Jeison's health insurance and eye exams are borne by her, Jeison would bear this cost if he were not in school and working. Appellant asserts that these expenses, which exceed $13,000, should have been included by the court in the total cost of Jeison's education, which the court utilized to determine the amount of appellee's support. She thus contends that appellee should pay more in accordance with the provisions of their separation agreement.

gation to provide college support by their subsequent, voluntary assumption of consumer debt.

Certainly, a party's ability to help with college must be viewed in the context of his available resources and financial ability. However, appellee's present expenses indicate that he enjoys a substantially better lifestyle now than he did when the parties divorced. His mortgage is nearly five times that of appellant. Yet, appellee wants to reduce his responsibility to provide college to his child by using the debt *voluntarily* incurred to underwrite this better lifestyle.

A party cannot be permitted to incur what are lavish or unreasonable expenses when viewed in context of how the party lived when the contract was signed and then use those expenses as an offset to his financial obligation to pay for college. If this is permitted, people routinely will be able to avoid their contractual obligation to provide college assistance by making unreasonable purchases. A party should not become impoverished to pay for college; however, a party should not intentionally incur debt to purchase a large house and other consumer goods but then contest his obligation to assume debt to finance college for a child when the party agreed to pay for college. This should not be permitted under general contract principles which provide that the reasonable expectations of the parties at the time the contract is signed must be fulfilled.

Appellant relies upon *Deiley v. Deiley*, 281 Pa.Super. 288, 422 A.2d 172 (1980), for the proposition that it is appropriate to include the costs of room and board within the costs of an education. In *Deiley*, a daughter attended Georgetown University, and we found that the costs of room and board properly were included in the total expenses deemed appropriate in setting the amount of support. Appellant argues that room and board equally were appropriate considerations in this case since they were necessary for Jeison successfully to complete his program. She asserts it does not matter that these costs were not incurred separately at the school, since they still were necessary.

We reject the assertion that equivalent imputed costs of room and board at school should be included. However, we do agree with appellant that it is appropriate to include within the cost of Jeison obtaining his college education all the additional expenses incurred by appellant on his behalf that she otherwise would not have paid if Jeison were working. These expenses would include extra food, increased utilities, medical insurance, and commuting costs. These are necessary adjunct expenses required in order for Jeison successfully to complete his program. Consequently, we direct the trial court on remand to add these expenses to its determination of Jeison's educational costs.

Next, appellant argues that the trial court improperly deducted a Parent Plus Loan in the amount of $3,880 incurred by her to pay for Jeison's expenses before calculating unmet expenses. The trial court subtracted this loan, together with Jeison's Stafford student loans to determine what costs were not met and therefore, what level of support would be required from appellee. In effect, she asserts, inclusion of this loan in Jeison's resources improperly lowered the cost of education to which appellee should contribute.[2]

2. It is apparent the trial court considered the contributions made by Jeison and appellant by first subtracting the loans and Jeison's part-time income from the total costs since appellee was obligated to pay the full amount remaining. However, this method makes it difficult to quantify the respective contributions of the parties. As appellee did not appeal the support order, this issue is not before us but should be

■ We agree that these expenses should be included in the cost of Jeison's education. As noted previously, our focus is the cost of Jeison's education and appellant's contractual agreement to contribute to its payment. Accordingly, we hold the trial court may not subtract a loan for which appellant is responsible from a determination of the college costs to which both parties have obligated themselves to contribute.

Finally, we agree with appellant that the court erred in calculating appellee's obligation by dividing the unmet expenses over a three year period instead of two years. Jeison's program of study will expire in two years. That other students may take three years to complete the program is immaterial. The educational expenses will be incurred in a two-year period and the obligation for payment endures for two years. There is no basis to extend the obligation to pay beyond that time.

Order reversed and remanded. Jurisdiction relinquished.