## Gaster v. Gaster

C.P. of Dauphin County, no. 123 S 1992.

*Judith A. Calkin,* for plaintiff.
*Anthony T. McBeth,* for defendant.

TURGEON, *J.,* June 19, 1996—On December 21, 1995, plaintiff/petitioner Mary Gaster filed a petition for contempt against defendant/respondent Edwin Gaster due to his failure to pay for the college expenses of the parties' daughter Cybil in accordance with the terms of a marital settlement agreement. Defendant thereafter filed an answer to the petition with a counter petition for contempt arguing that his ex-wife and daughter had excluded him from the process of choosing a college in violation of the terms of the marital settlement agreement. A hearing on the matter was held before me on March 4, 1996 following which I issued an order finding defendant responsible for contribution for college support. On April 9, 1996, I entered an order setting forth the amount of defendant's financial obligation which was amended on April 23, 1996. Those orders directed defendant to pay $5,370 for Cybil's 1995-1996 college expenses by June 1, 1996 and to pay $5,351.92 for her 1996-1997 college expenses in monthly installments of $446, commencing July 1, 1996.[1] On May 6, 1996, defendant appealed from the order of April 9, 1996. This opinion is written in support of the April orders pursuant to Pa.R.A.P. 1925(a).

_____

1. On May 31, 1996, defendant filed a motion for stay of the April orders pending appeal. In addition, defendant sought credit for past support payments he had made on Cybil's behalf. By order dated June 6, 1996, the stay was denied but the credit was granted, reducing defendant's obligation for 1995-1996 expenses to $3,811.20 which was ordered payable in a lump sum by June 6, 1996.

The parties' divorce decree, entered August 5, 1992, incorporated the terms of a marital settlement agreement. Paragraph 12 of that agreement sets forth the following:

"Should any of the children seek higher education beyond the high school level, husband agrees to assist payment of such higher educational expenses. Both parties shall contribute to the children's college expenses considering their respective financial abilities and the aptitude of the children.

"The parties shall confer with each other with regard to the nature and extent of the formal education of the children. Both parties shall be involved with their children in choosing a college/university or trade school."

Paragraph 5 of the agreement provides that its terms are incorporated but not merged into the divorce decree and that the agreement is a contract separate and independent of the divorce decree.

Cybil began her freshman year at New York University in the fall of 1995. She had been admitted into that school's Tisch School of the Arts and is majoring in theater stage management. In her first semester, she took 18 credits and earned a GPA of 3.844, earning dean's list honors.[2] Her tuition for the 1995-1996 school year was $19,500. Other costs, including housing, meals, books and fees, raised her total yearly cost to $27,092. She was able to obtain loans and scholarships totalling $14,592. In addition, cash contributions from herself ($4,000), her mother ($3,000) and relatives and friends ($1,500), covered all but $4,000 of the remaining expenses. It is this amount that plaintiff sought from the defendant. For the upcoming school year, it is projected

---

2. At the time of the hearing, her second semester had not yet concluded.

that the total cost will rise to $28,207. Nevertheless, plaintiff seeks the same amount, $4,000, from the defendant.[3]

For the 1995-1996 school year, Cybil lived very frugally. She has obtained discount housing through the school, lives in New York City on an allowance of $25 per month and has a meal plan which provides only 10 meals per week.

At the time Cybil began her college career, plaintiff obtained a child support order through the Dauphin County Domestic Relations Office, requiring defendant to contribute $95 per week to Cybil's educational costs as required by Pennsylvania statutory law.[4] 23 Pa.C.S. §4327. The enactment of section 4327 (Act 62) had been made in response to the Pennsylvania Supreme Court's decision in November of 1992 in *Blue v. Blue,* 532 Pa. 521, 616 A.2d 628 (1992). In *Blue,* it was held that there existed no judicially imposed requirement that a parent provide educational support for a child no longer a minor who has completed high school. Section 4327, which became effective on July 2, 1993, reimposed upon separated, divorced or unmarried parents, an obligation to provide support for college-aged children. However, on October 10, 1995, in *Curtis, supra,* the Supreme Court held that Act 62 was in violation of the equal protection provision of the Fourteenth Amendment in that the state had no rational basis for requiring parents of non-intact families to provide col-

3. These figures were provided by the plaintiff, who is a CPA, in exhibit 1, which we find to be accurate. Exhibit 1 also includes projected figures for Cybil's junior and senior years.

4. The child support order was entered on August 4, 1995 by Judge Todd Hoover and required defendant to pay $179 per week, allocated $84 for the parties' minor child Lydia and $95 for Cybil. *Gaster v. Gaster,* no. 1149 DR 1992 (Dauph. Co.).

lege-age support while not requiring the same of parents of intact families. *Id.* at 258-59, 666 A.2d at 269-70. Accordingly, by order dated December 15, 1995, the defendant's obligation to provide college support, as part of an order enforceable through domestic relations, was terminated effective October 10, 1995. However, the parties stipulated in the domestic relations action as follows: "Mary A. Gaster specifically reserves her right to pursue college support on behalf of the parties' children based on the parties' property settlement agreement."

In his statement of matters on appeal, defendant raises many issues, which can be summarized as follows:

"(1) Cybil estranged herself from defendant and he is therefore not obligated to pay any of her college expenses.

"(2) The plaintiff and Cybil completely excluded defendant from the process of choosing a college in violation of paragraph 12 of the marital settlement agreement. Accordingly, he has no obligation to pay college expenses. Furthermore, even if the contractual provision is enforceable, defendant's obligation should be calculated on what his obligation would have been had Cybil attended Penn State University.

"(3) The language of paragraph 12, requiring defendant to assist in payment for his children's higher educational expenses, is vague and indefinite and enforcement of its provisions violates his due process rights. In addition, this provision is invalid and unenforceable under *Curtis v. Kline* in that enforcement would compel him to surrender his fundamental constitutional right to equal protection, enforcement is against public policy, and it is a mere gratuitous promise lacking in consideration.

"(4) Plaintiff waived or is estopped from asserting a right to college expenses under the marital settlement agreement.

"(5) If the paragraph 12 of the marital settlement agreement is enforceable, defendant raises a number of issues regarding the amount of his obligation:

"(a) payment of expenses per court order would work an undue hardship upon the defendant,

"(b) defendant's income has been wrongly calculated,

"(c) defendant should not be required to make a lump sum payment (due June 1, 1996) for past due expenses,

"(d) defendant is due to receive a credit against his obligation."

## ESTRANGEMENT

Initially, it must be noted that while a parent has no legal duty to support his or her child's post-secondary education under the current State of Pennsylvania law, an agreement to assume the duty to provide post-majority educational support is enforceable at law. *Reif v. Reif,* 426 Pa. Super. 14, 21, 626 A.2d 169, 173 (1993); *Trunkwalter v. Trunkwalter,* 421 Pa. Super. 308, 309-10, 617 A.2d 1308, 1309 (1992) (citing *Blue, supra,* and *Emrick v. Emrick,* 445 Pa. 428, 284 A.2d 682 (1971)). Such a duty was not extinguished by the Pennsylvania Supreme Court's decision in November of 1992 in *Blue. Soll v. Soll,* 429 Pa. Super. 312, 316, 632 A.2d 581, 583 (1993). This is important to note since here, the parties entered into their marital settlement agreement prior to the court's decision in *Blue.* Thus, the parties' marital settlement agreement survived *Blue* and is enforceable as a contract.

With regard to estrangement, defendant had argued that Cybil has estranged herself from him and that as a result, she is not entitled to college expenses from him. However, I disallowed any testimony on the issue, holding that the law is quite clear that estrangement is not a defense where the obligation to pay college expenses is based upon a contract, as it is here. *Trunkwalter, supra* at 310, 617 A.2d at 1309. See also, *Cook v. Covey,* 415 Pa. Super. 353, 609 A.2d 560 (1992).

## COLLEGE CHOICE

The testimony established that, while the parties did not communicate in an ideal manner, defendant was informed that Cybil planned to attend a four-year college and that he had a chance to get involved in her ultimate decision but chose not to. Accordingly, no violation of paragraph 12 of the parties' agreement occurred.

Specifically, the testimony revealed that plaintiff called defendant sometime in 1994, while Cybil was in the process of choosing a college, and informed him that she needed his financial statements in order for Cybil to apply to Yale University. In addition, plaintiff submitted to defendant a list of schools to which Cybil was applying including Yale, New York University, SUNY, Syracuse and Northwestern. Later, during Thanksgiving dinner in 1994, Cybil discussed, in front of her father and other family members, her interest in NYU. He did not respond in any way. After her acceptance to NYU, she informed him she would accept. Again, defendant did not respond. In fact, according to Cybil, the only opinion she recalls her father having about college at any time was that he did not believe women should go to college. While defendant denies making this statement, he admits that he did not initiate

any contact with Cybil regarding her college choice and instead waited for her to contact him.

Defendant has also argued that even if the contractual provision is enforceable, defendant's obligation should be calculated on what his obligation would have been had Cybil attended Penn State University.[5] This position, however, has no relevance to this case. Defendant never once suggested that Cybil should attend Penn State nor was Penn State on the list of colleges given to him by plaintiff. In fact, defendant's own testimony indicated that he considered Penn State to be one of many of the "devil's workshops" and thus, it is questionable whether he would have even recommended Penn State as an option to Cybil while she was making her decision. By his own actions he has indicated an intention to relinquish his right to have any input in the choice of a college by failing to respond and confer with Cybil and her mother when that decision was being made.

Cybil has proved to be an exceptional student who has been involved in the theater since she was 11 years old. It was Cybil's opinion the course of study offered at Penn State in theater stage management was not on the level of NYU's. In addition, defendant offered no testimony at the hearing on the advantages offered by the Penn State program, except that its tuition was considerably lower.

## VALIDITY OF CONTRACT

Defendant argues that the language of paragraph 12, requiring him "to assist payment for [his children's]

---

5. The parties have stipulated that tuition, room, board and books at Penn State's University Park Campus for 1995-1996 would have cost Cybil approximately $1,297. This includes a 75 percent discount for the children of Penn State employees, such as plaintiff.

higher educational expenses," is vague and indefinite and enforcement of its provisions violates his due process rights. This argument is without merit. The language of paragraph 12, voluntarily entered into by defendant, is perfectly clear. Such language has been utilized in separation agreements and the like on many occasions and has frequently been interpreted by the courts. See *e.g., Goss v. Timblin,* 424 Pa. Super. 216, 221, 622 A.2d 347, 350 (1993).

Defendant has also argued that this provision is invalid under *Curtis v. Kline* because enforcement would compel him to surrender his fundamental constitutional right to equal protection. This argument too is without merit. Defendant is not being compelled by the state to assist in the college education of his children. Instead, defendant's obligation is solely contractual and thus was voluntarily undertaken. At the hearing, defendant argued that the obligation was not voluntary in that he would not have entered into it had he known about *Curtis v. Kline* at the time. However, arguments similar to this have been previously rejected. See *Soll, supra* at 316, 632 A.2d at 583 (contractual obligation to provide college support entered prior to the *Blue* decision was not extinguished by that decision in November of 1992).

Finally, defendant argues enforcement of the marital settlement agreement is against public policy and is also invalid as a mere gratuitous promise lacking in consideration. Clearly, it is not against public policy for a parent to voluntarily enter into a contract agreeing to support his or her child in pursuing a higher education. With regard to lack of consideration, it is not clear to us that the defendant's agreement to assist in his children's education was completely gratuitous. At the time the parties entered their agreement, the law judicially imposed upon parents an obligation to provide

college support. Instead of relying upon that law, the parties specifically agreed to impose on the defendant an obligation which was enforceable as written. We cannot now guess at what, if any, concessions plaintiff may have made or what rights she may have relinquished to put that obligation in writing. See *Cook, supra* at 358, 609 A.2d at 563. ("As we cannot presume to know what concessions were made in the formation of the separation agreement, or what rights mother may have relinquished in return for father's [written] promise to pay college expenses, we will not look beyond the written agreement.")

## WAIVER AND/OR ESTOPPEL

Defendant argues that plaintiff has waived or is estopped from asserting a right to college expenses under the marital settlement agreement since she stipulated to terminate his college payments in the domestic relations action despite his acknowledgement in that same stipulation that plaintiff was reserving her right to pursue college support from defendant under the terms of the marital settlement agreement. The language of the reservation clause in the stipulation could not be any clearer and this argument must be dismissed as completely frivolous.

## INCOME ISSUES

Defendant is employed by the U.S. Postal Service and had a net annual income in 1995 of approximately $31,000. In 1994, defendant claimed $24,442 in business losses incurred in his attempt to start publication of a religious newsletter. (Defendant's exhibit no. 1.) Defendant also claimed to have made $18,795 in charitable contributions in 1994. Plaintiff is employed by Penn State University, Middletown Campus. Between

her salary there and rental income, her net annual income for 1995 was approximately $24,000. (Plaintiff's exhibit no. 3.)

The figures submitted by plaintiff indicated that without contribution from either the defendant or the plaintiff, Cybil's unpaid college expenses for 1995-1996 totalled $7,000. (Plaintiff's exhibit no. 1.) Her other expenses, including an allowance, clothing, food, medical and transportation costs totalled $2,588. (See plaintiff's exhibit no. 2.) Of this total of $9,588, I held defendant was responsible for 56 percent, or $5,370, which represented his portion of the parties' total net income. This obligation was later revised to $3,811.20, taking into consideration payments defendant had made on Cybil's behalf through the domestic relations office.[6] For 1996-1997, Cybil's unpaid expenses were calculated to be $6,969 with other expenses holding at $2,588. Again, defendant was held responsible for 56 percent of this amount or $5,351.92

Defendant argues that this imposes an undue hardship upon him, particularly in light of his 1994 business losses. The concept of undue hardship, however, does not apply where support is based upon a contractual obligation. It applies only when the law imposes an obligation on a parent to provide college support, either as judicially imposed under pre-*Blue* decisions or statutorily under Act 62. Such an obligation was limited to situations where the burden of college support would not cause undue hardship upon the parent. See *e.g., Pharoah v. Lapes,* 391 Pa. Super. 585, 590, 571 A.2d 1070, 1073 (1990) and 23 Pa.C.S. §4327(f). Here, however, the support obligation is contractually imposed. We are therefore limited to interpreting the terms of

---

6. See footnote 1, *supra.*

the parties' agreement which require that in determining the parties' financial obligation, that "their respective financial abilities" be taken into consideration.

Where language of a contract is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as manifestly expressed, rather than the silent intent of the parties. *Keenan v. Scott Township Authority,* 151 Pa. Commw. 225, 616 A.2d 751 (1992). The court must construe the contract only as written and may not modify the plain meaning of the words under the guise of interpretation. *Creeks v. Creeks,* 422 Pa. Super. 432, 619 A.2d 754 (1993). The language requiring the parties to assist in their children's college education, taking into consideration "their respective financial abilities," is clear and unambiguous. In applying this limitation to setting defendant's financial obligation, it is clearly within his financial ability, having earned a net income of $31,000, to contribute $5,370 to assist Cybil in furthering her education.

Defendant argued that the court erred in failing to take into consideration the full amount of defendant's business loss. First, that loss occurred in 1994 and his obligation to his daughter commenced in the fall of 1995. Defendant did not provide evidence of losses in 1995. Furthermore, defendant voluntarily compounded his financial situation by making over $18,000 in charitable contributions in 1994. While we do not criticize his decision to start a business or to make charitable contributions, defendant should have also considered that he had a previously existing financial obligation to assist in the college education of his children. Pertinently, the Superior Court has interpreted similar language in a separation agreement requiring the parties to "assist the children to obtain a college

education to the best of their then financial ability" and stated as follows:

"We note with interest the fact that appellee has incurred significant financial obligations since he agreed contractually to provide college support for his child. While the trial court looked at appellee's reasonable expenses in terms of present obligations, we believe that care must be taken that litigants do not effectively void their contractual obligation to provide college support by their subsequent, voluntary assumption of consumer debt.

"Certainly, a party's ability to help with college must be viewed in the context of his available resources and financial ability. However, appellee's present expenses indicate that he enjoys a substantially better lifestyle now than he did when the parties divorced. . . .

"A party cannot be permitted to incur what are lavish or unreasonable expenses when viewed in context of how the party lived when the contract was signed and then use those expenses as an offset to his financial obligation to pay for college. If this is permitted, people routinely will be able to avoid their contractual obligation to provide college assistance by making unreasonable purchases. . . . This should not be permitted under general contract principles which provide that the reasonable expectations of the parties at the time the contract is signed must be fulfilled." *Goss, supra* at 221-22 n.1, 622 A.2d at 350 n.1.

While this discussion is directed at the voluntary assumption of significant consumer debt, it is nevertheless instructive in this case.

Defendant also argued that the calculation of his income improperly included overtime wages inasmuch as Pennsylvania law does not require overtime pay and without it, his income in 1995 should have been cal-

culated as $27,500 instead of $31,000. However, the *total* amount of income defendant *earned* including overtime accurately represented his income and thus his ability to pay college support per the parties' agreement.

Defendant next argues that he should not have been required to make a lump sum payment of $3,811.20 by June 7, 1996 for Cybil's 1995-1996 expenses. This amount represented the balance he owed for his past contractual obligation. Defendant argues that since it is for the completed year, Cybil has no need for such a large sum of cash. This argument is meritless. The evidence indicated Cybil was approximately $4,000 short of meeting her college expenses in 1995-1996 (not including other expenses such as an allowance, clothing, food, etc.). It therefore seems quite clear she is in need of these funds.

Finally, defendant argues he was due to receive a credit against his obligation for payments he made after October 10, 1995, via wage attachments for Cybil's college education pursuant to the domestic relations support order. However, we note that the parties stipulated in the domestic relations action that the defendant should be given a credit against his support obligation for his youngest child, a minor, for payments made beyond October 10, 1996 on behalf of Cybil. Defendant was also given a credit for the payments he made on behalf of Cybil prior to October 10, 1995 against the lump sum payment due on June 7, 1996, which reduced his obligation from $5,370 to $3,811.20.

Accordingly, the April orders were entered requiring defendant to assist in the payment of his daughter's college education pursuant to the parties' marital settlement agreement.